UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID WESTON,

        Plaintiff,

v.

        Case No. 25-cv-952-pp

EMILIE AMUNDSON, *et al.*,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT AND DISMISSING CASE FOR LACK OF JURISDICTION**

On July 3, 2025, the plaintiff—who is representing himself—filed a complaint, dkt. no. 1, and a request to proceed without prepaying the filing fee, dkt. no. 2. The complaint alleges that various individuals violated the plaintiff's constitutional rights in relation to child custody proceedings. Dkt. No. 1. Previously, in 2024, the plaintiff filed a case in this district bringing the same claims, which Judge Stadtmueller dismissed without prejudice for failure to prosecute. See Weston, *et al.* v. Amundsun, *et al.*, Case No. 24-cv-385, Dkt. No. 35 (E.D. Wis. Nov. 7, 2024).

The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee but will dismiss this case for lack of jurisdiction.

**I.    Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose his financial condition and must do so truthfully under

1

penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The plaintiff's affidavit avers that he is married with no dependents. Dkt. No. 2 at 1. He avers that he is self-employed and makes $1,000 per month. Id. at 2. The plaintiff avers that he has $1,800 in monthly expenses, with $1,000 going to rent and $800 going to other household expenses. Id. at 2–3. He owns a car worth approximately $500. Id. at 3. He avers that he has no money in cash or bank accounts and no other property of value. Id. at 3–4.

The court finds that the plaintiff does not have the ability to prepay the filing fee and will grant his motion for leave to proceed without doing so. The court advises the plaintiff, however, that he still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee. See Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original). The plaintiff must pay the filing fee over time, as he is able.

## II. Screening the Complaint

### A. Legal Standard

The court next must "screen" the complaint to decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A

2

document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). And a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

B. The Complaint

The plaintiff titles his complaint "second amended complaint;" the first sentence of the complaint says that "[t]his case originally was filed and accepted into the District Court by the Honorable Judge J.P. Stadtmueller in Case Number: 24-CV-385-JPS." Dkt. No. 1 at 1. He concedes that case "was dismissed without prejudice for failure to prosecute," then states that the complaint in this case "is a second amended complaint." Id.

The complaint is fifty-two pages long and contains numerous case citations, repetitive background principles and legal argument. The court will

not recite all this information and has attempted to distill the complaint to its most relevant allegations.

As best as the court can determine, the plaintiff is challenging child custody proceedings involving the removal of his child T.W. The defendants are the Kenosha County Division of Children and Family Services, the Wisconsin Department of Children and Families, several employees of these agencies, the state of Wisconsin and the city and county of Kenosha. Dkt. No. 1 at ¶¶4–29, 43. The plaintiff alleges that on January 15, 2022, his wife, E.W., gave birth to T.W. four weeks early. Id. at ¶¶55–56. He alleges that "the hospital staff" determined that T.W. was drug positive at birth and that T.W. should stay in the hospital for approximately three weeks. Id. at ¶59. He says that on January 19, 2022, the hospital reported this information to the Kenosha County Division of Children and Family Services. Id. The plaintiff asserts that the agency immediately opened a case and that two of the "agents" assigned to this case, defendants Alicia Shannon and Emily Gilbert, had "a pre-existing bias" toward E.W. due to prior cases involving her other children. Id. at ¶60. He contends that the agents made him "a pawn in their efforts to retaliate" against E.W. and that they did not fairly assess his ability to parent T.W. before removing T.W. from his care. Id. at ¶62.

The plaintiff alleges that defendants Shannon, Gilbert and Brock Roberts met on January 19, 2022 and "co-conspired in the creation of detailed plans necessary for obtaining a Protective Order to remove T.W. from her parent's care in violation of due process." Id. at ¶63. He says that Shannon called him that same day; he asserts that he informed Shannon "of his ability to parent TW and to live at a separate residency from EW if necessary." Id. at ¶64. The plaintiff alleges that five days later, Shannon filed an emergency, *ex parte*

4

request for removal of T.W. from both parents' care. Id. at ¶65. According to the plaintiff, Shannon supported this request with an affidavit containing "demonstratively false information" as to E.W. and no allegations as to the plaintiff "aside from an outdated and irrelevant allegation of presumptive poverty." Id. He states that the Kenosha County Family Court granted the request and removed T.W. Id. The plaintiff maintains that he was fit and able to care for T.W. at the time the petition for removal was filed. Id. at ¶66.

The plaintiff alleges that Shannon and Gilbert assumed custody of T.W. on her release from the hospital on February 2, 2022 under an emergency pick-up order. Id. at ¶67. He asserts that the agency did not give him or E.W. prior notice that it would be assuming custody. Id. He states that Shannon called E.W. after executing the pickup order and informed her that there was a hearing scheduled for the following day. Id. at ¶69. The plaintiff states that he did not receive a formal notice of the hearing, but that E.W. informed him and that both parents attended the hearing. Id. at ¶70. The plaintiff asserts that he was not named as a respondent in the post-deprivation hearing "and therefore [he] had no reasonable need to prepare a defense." Id. at ¶75. He contends that he "was correct to assume that he would surely enjoy preference for placement of TW at this hearing" because he had no history of neglect or allegations of neglect. Id. at ¶76. He alleges that because he was not a named party, he "was not allowed the meaningful opportunity to participate in the hearing." Id. He states that the court issued a protection order against E.W. and placed T.W. in a foster home. Id.

The plaintiff argues that these proceedings violated his due process rights because he was not a named party and was not able to present arguments that T.W. should be placed with him. Id. at ¶¶79–80. He alleges that

5

the agency made no attempt at reunification over the next six months leading up to the dispositional phase of the proceedings. Id. at ¶85. He alleges that no one evaluated his home for placement and that he was allowed supervised visitation only in an "exceedingly restrictive setting." Id. at ¶¶85–86. The plaintiff says that he was added to the case as a petitioner rather than a respondent shortly before the dispositional hearing. Id. at ¶87. He argues that this was intentionally designed to "confuse and obstruct justice" and that any orders and judgments against him are "void ab initio." Id. at ¶¶88, 90.

The plaintiff asserts that defendant Alesha Brereton falsely stated in T.W.'s permanency plan that the plaintiff did not maintain a suitable residency, that he was homeless and that he was unable to provide the necessary care for T.W. at the time the petition was filed. Id. at ¶93. The plaintiff contends that he was not informed of various proceedings during the case and so the court entered default against him due to his counsel's failure to object and subsequent withdrawal from the case. Id. at ¶¶96–97. He says that the judge's decision at the dispositional hearing was clearly erroneous and unsupported by law because there was no finding that the plaintiff was an unfit parent. Id. at ¶102. He argues that he is not bound by the conditions of return set out in the order because the order was issued without due process. Id. at ¶103. He contends that these unspecified conditions constituted "involuntary servitude." Id. at ¶104.

The plaintiff alleges that in February 2023, he filed another placement motion which was denied "despite his compliance with the arbitrary conditions set down by the state as barriers to his lawful right to parent." Id. at ¶105. He alleges that Brereton "coerced" E.W. into leaving their home to have T.W.

returned to the plaintiff's care, which he argues interfered with his constitutional right to direct the private affairs of his household. Id. at ¶109.

The plaintiff alleges that he contacted defendants John Johnson, Emilie Amundson, Pamela Condos, Michelle Lang and Ron Rogers to complain about the removal proceedings and alleged discrimination. Id. at ¶110. He states that the Wisconsin Department of Children and Families dismissed his complaint after an investigation, and he was denied an administrative review of the findings. Id. at ¶111.

The plaintiff seeks declaratory judgment, $12,450,000 in compensatory damages, $100,000,000 in punitive damages, injunctive relief, fees and costs and other relief. Id. at ¶¶188-199.

C. Analysis

The plaintiff states that this is his "second amended complaint." It is not. Judge Stadtmueller dismissed his first complaint and the plaintiff neither asked Judge Stadtmueller to reconsider his decision nor appealed that decision. Judge Stadtmueller closed the 2024 case on November 7, 2024 and it remains closed. The plaintiff filed his complaint in *this* case on July 3, 2025—eight months after Judge Stadtmueller dismissed his first case. That complaint opened a new, separate case. The filings and orders in Case No. 24-cv-385 are not part of this 2025 case, and the complaint the plaintiff filed on July 3, 2025 does not "amend" the complaint he filed in the 2024 case.

In screening the 2025 case, the court first must determine whether it has jurisdiction over the case. Federal courts are courts of limited jurisdiction. They have the authority to consider and decide lawsuits between citizens of different states if the amount in controversy is more than $75,000—this is called "diversity jurisdiction." 28 U.S.C. §1332. They also have the authority to

consider and decide cases that involve violations of federal laws or the federal Constitution—this is called "federal question" jurisdiction. 28 U.S.C. §1331. Federal courts cannot consider and decide lawsuits alleging violations of state law unless the plaintiff lives in a different state from every defendant (and the amount of claimed damages exceeds $75,000), or unless the state-law claims relate to a federal claim.

The plaintiff asserts that he is suing for violations of federal law, specifically violations of his constitutional rights. But "the domestic-relations exception to federal jurisdiction blocks federal adjudication of cases involving 'divorce, alimony, and child custody decrees.'" Syph v. Arce, 772 F. App'x 356, 357 (7th Cir. 2019) (quoting Marshall v. Marshall, 547 U.S. 293, 307-08 (2006)); Friedlander v. Friedlander, 149 F.3d 739, 740 (7th Cir. 1998). "State courts are assumed to have developed a core proficiency in probate and domestic relations matters and they can decide federal questions at the same time." Syph, 772 F. App'x at 357 (citing Sykes v. Cook Cnty. Cir. Ct. Probate Div., 837 F.3d 736, 741 (7th Cir. 2016)). Because the plaintiff's claims relate to child custody orders, his lawsuit falls squarely within the domestic-relations exception to federal jurisdiction.

The complaint contains legal arguments that the domestic-relations exception does not apply. The plaintiff contends that the domestic-relations exception applies only to custody disputes between parents and not custody disputes initiated by the state. Dkt. No. 1 at ¶¶177–78. Not so. The "core" of the domestic-relations exception includes cases in which a plaintiff seeks "one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." Friedlander, 149 F.3d at 740.

There is no distinction between cases brought against another parent or cases brought against the state. See Syph, 772 F. App'x at 357–58 (invoking the domestic-relations exception in a case where the plaintiff sued his ex-wife's attorney and two Illinois judges). The plaintiff tries to plead around this limitation, but in his prayer for relief, he asks this court to void a child custody determination. Dkt. No. 1 at ¶188. The relief the plaintiff seeks places his case squarely within the domestic-relations exception to this court's jurisdiction. See, *e.g.*, Bowersock v. Matherly, Case No. 23-1368, 2023 WL 6847548, at *6 (C.D. Ill. Oct. 17, 2023) (dismissing case seeking return of children from foster care because "the Court is barred from providing Plaintiff's requested relief due to the domestic-relations exception"); Gmeiner v. Wienke, Case No. 22-C-1247, 2022 WL 14637242, at *1 (E.D. Wis. Oct. 25, 2022) (dismissing case for lack of jurisdiction where the plaintiffs alleged they were deprived of parental rights without due process and sought to challenge the child custody determination).

The plaintiff also asks the court to award him monetary damages to compensate him for the emotional harm he suffered when the state allegedly denied him the right to parent his child. Dkt. No. 1 at ¶¶189-90. This request for relief provides a second reason the court lacks jurisdiction: the Rooker-Feldman doctrine. As the Seventh Circuit has explained,

> [u]nder the *Rooker–Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983). The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations. *See Feldman*, 460 U.S. at 482 n. 16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court."). *Rooker–Feldman*, therefore, requires a party seeking review of a state court judgment or presenting a claim that a state judicial proceeding has violated

> their constitutional rights to pursue relief through the state court system and ultimately to the Supreme Court. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 701–02 (7th Cir. 1998). The doctrine stems, in part, from recognition of the fact that "a decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court." *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995).

Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999). For the court to determine whether the Rooker-Feldman doctrine applies, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996). "If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." Centres, 148 F.3d at 702. Put simply, "the *Rooker-Feldman* doctrine applies only when a loser in state court files a federal suit seeking review and rejection of the state court's judgment." Bryant v. Chupack, 93 F.4th 1029, 1032 (7th Cir. 2024) (citing Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291-94 (2005)). Rooker-Feldman applies only to claims brought by individuals who were parties to the prior state court judgment. Lance v. Dennis, 546 U.S. 459, 466-67 (2006).

Here, the plaintiff's alleged injuries result from the state court judgment removing his daughter from his custody. Although the plaintiff alleges that at first he was not a party to the custody case, he later alleges that he was "named as a petitioner alongside the state" shortly before the dispositional hearing. Dkt. No. 1 at ¶87. The allegations in the complaint establish that the plaintiff was a party to the case when the state court rendered its judgment.

This court lacks jurisdiction to review the state court's judgment under the Rooker-Feldman doctrine.

The court is aware that in the plaintiff's prior lawsuit, Judge Stadtmueller allowed the plaintiff to proceed past screening with some claims arising out of these same facts. See Weston, Case. No. 24-cv-385, Dkt. No. 10. Judge Stadtmueller left open the question of whether the domestic-relations exception applied to some of the claims because he believed there was not enough information in the complaint to determine the applicability of the exception. Id. at 12. Judge Stadtmueller also determined that the Rooker-Feldman doctrine might not apply because it was unclear from the 2024 complaint whether the plaintiff was a party to the state court custody case. Id. at 11. But this is a new case, begun with a new complaint. This court must independently determine whether the allegations in the complaint filed in *this case* establish that the court has jurisdiction. The facts as pled in this case establish that the plaintiff was a party to the state court judgment and so the Rooker-Feldman doctrine applies. The plaintiff also clearly seeks to void the state court's custody determination in his prayer for relief in this complaint, which places the case squarely within the domestic-relations exception.

Because the court has no jurisdiction, it cannot consider the merits of the plaintiff's claims. The plaintiff must challenge the child custody proceedings in state court. See T.W. by Enk v. Brophy, 124 F.3d 893 (7th Cir. 1997) (explaining that dispute over Wisconsin court's custody decree could be refiled in Wisconsin state court). The plaintiff must seek relief challenging the state court's judgment "through the state court system and ultimately to the Supreme Court." Long, 182 F.3d at 554 (citing Centres, 148 F.3d at 701–02).

11

Although district courts generally give civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Here, amendment would be futile; the court does not have jurisdiction over the plaintiff's child custody dispute because of the domestic-relations exception and the Rooker-Feldman doctrine.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** for lack of jurisdiction. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 28th day of October, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**